UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CARLTON WILLIAMS,

                Plaintiff,

v.

UNKNOWN FRANK, et al.,

                Defendants.

_____/

Case No. 1:23-cv-1101

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.29.)

On October 26, 2023, this case was referred to *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program.  (ECF No. 4.)  However, on November 14, 2023, the Court removed the case from the Early Mediation Program to facilitate the resolution of the names of the unknown Defendants.  (ECF No. 5.)  The Court performed a limited preliminary review of Plaintiff's complaint under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) and, on November

28, 2023, ordered the Clerk to substitute the names of several Defendants identified in the exhibits to Plaintiff's complaint.  (ECF No. 6.)

On January 4, 2024, this case was again referred to the Early Mediation Program (ECF No. 10); however, the case did not settle in mediation.  Accordingly, this case is presently before the Court for preliminary review under the PLRA as to the substance of Plaintiff's complaint.  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service,

creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants John Doe #1, also known as Defendant Frank, John Doe #2, also known as Defendant Beauve, John Doe #3, also known as Defendant Grossmon, John Doe #15, John Doe #17, and John Doe #16.  The Court will also dismiss, for failure to state a claim, the following federal claims against the remaining Defendants John Doe #11 and John Doe #12: First Amendment retaliation claim premised upon verbal comments, Fourteenth Amendment claims, claims related to the handling of Plaintiff's kites and grievances, and claims related to the handling of Plaintiff's class II misconduct.  Plaintiff's First Amendment claim for retaliation premised upon the issuance of Plaintiff's class II misconduct and supplemental state law claims against Defendants John Doe #11 and John Doe #12 will remain in the case.

---

its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.  The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  Plaintiff sues Corrections Officers John Doe #1, also known as Corrections Officer Unknown Frank (ECF No. 1-1, PageID.34), John Doe #2, also known as Corrections Officer Unknown Beauve (ECF No. 1-3, PageID.36), John Doe #3, also known as Corrections Officer Unknown Grossmon (*id.*), and John Doe #12. Plaintiff also sues Sergeant John Doe #11, Psychiatrists John Doe #15 and John Doe #17[2], and Grievance Coordinator John Doe #16.

Plaintiff alleges that, on May 16, 2022, Plaintiff was being escorted to the shower by Defendants Frank and Beauve when Defendant Frank asked whether Plaintiff thought he smelled good and looked nice.  (ECF No. 1, PageID.4.)  Plaintiff asked Defendant Frank, "Is you gay?" to which Defendant Frank replied, "That's not very nice."  (*Id.*)  While Defendant Frank was uncuffing Plaintiff at Plaintiff's cell, Defendant Frank's "hand brushed against [Plaintiff's] penis."  (*Id.*)  Defendant Frank

---

[2] In its November 28, 2023, order, the Court directed the Clerk to substitute the name of Corrections Officer Unknown France for Defendant John Doe #17. (ECF No. 6.) Upon further review, the Court has concluded that Officer Unknown France in fact referred to non-party John Doe #7, not Defendant John Doe #17. The Court will direct the Clerk to remove Unknown France from the list of Defendants on the Court's docket.

gave Plaintiff "a look" that indicated to Plaintiff that it was done purposefully. (*Id.*) Plaintiff wrote a grievance regarding this incident and handed it to Defendant Beauve that evening. (*Id.*)

On May 17, 2022, Defendant Grossmon asked Plaintiff what Plaintiff's problem was with Defendant Frank. (*Id.*, PageID.6.) Plaintiff presumed that Defendant Grossmon had read Plaintiff's grievance and asked whether that was true. (*Id.*) Defendant Grossmon walked away with a grin. (*Id.*)

On May 19, 2022, Plaintiff was taken to speak with "Psyche" about his anxiety stemming from the May 16, 2022, incident. (*Id.*, PageID.12.) Psyche gave Plaintiff a remedy consisting of breathing exercises. (*Id.*)

On May 23, 2022, Plaintiff asked Defendant Beauve whether she had submitted Plaintiff's grievance. (*Id.*, PageID.7.) She did not answer, so Plaintiff submitted a kite to non-party Correctional Officer John Doe #4. (*Id.*) On May 28, 2022, after not having received a response, Plaintiff wrote a grievance against Defendant Beauve. (*Id.*)

On June 1, 2022, Defendant Frank and non-party John Doe #7 came to Plaintiff's cell to escort Plaintiff to the shower. (*Id.*, PageID.4.) Defendant Frank cuffed Plaintiff and, while escorting Plaintiff to the shower, told Plaintiff in a manner loud enough for other inmates to hear, "You're a rat.  You wrote a snitch kite on me!" (*Id.*, PageID.4–5.) Plaintiff was then "picked on by other inmates." (*Id.*, PageID.5.) When John Doe #7 later made his rounds, Plaintiff asked for a PREA grievance form

as he had not heard anything regarding his May 16th grievance.  (*Id.*)  John Doe #7 never brought Plaintiff a form.  (*Id.*)

On June 2, 2022, Defendant Frank wrote Plaintiff a class II misconduct for the shower incident the previous day.  (*Id.*; ECF No. 1-5, PageID.39.)

On June 3, 2022, Plaintiff met with Defendant John Doe #17 to again discuss his anxiety and the harassment by Defendant Frank and "staff."  (ECF No. 1, PageID.12.)  Defendant John Doe #17 told Plaintiff that this was not mentioned in the notes from Plaintiff's earlier visit and instructed Plaintiff to perform breathing exercises.  (*Id.*)

On June 6, 2022, Plaintiff submitted a kite to non-party Sergeant Lautner, who is in charge of PREA investigations.  (*Id.*, PageID.9.)  Plaintiff also submitted a medical kite to a non-party male nurse on June 7, 2022.  (*Id.*)

Later that morning, Plaintiff was taken to an interview to speak with Defendants John Doe #11 and John Doe #12.  (*Id.*)  Based upon the documents attached to Plaintiff's complaint, the Court concludes that the identities of these defendants is not unknown to Plaintiff.[3]  Plaintiff alleges that both Defendants John

---

[3] The Court may consider documents that are attached to a pro se complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced

Doe #11 and John Doe #12 were present during John Doe 11's interview of Plaintiff relating to the PREA complaint and told Plaintiff that he was a liar and that his PREA complaint was false.  (*Id.*, PageID.9–10.)   Plaintiff received a class II misconduct report because of this interaction.   (*Id.*; ECF No. 1-8, PageID.43.) Plaintiff also reports that he filed a grievance against John Doe #11 and John Doe #12.  (*Id.*, ECF No. 1-7, PageID.41–42.)  Based on the information provided in the grievance and the misconduct report, the Court concludes that John Doe #11 is Sergeant Unknown Stone and that John Doe #12 is Corrections Officer Unknown Boerema.  The Court will direct the Clerk to substitute those names for Defendants John Doe #11 and John Doe #12.  For the balance of this opinion, however, the Court will continue to use the pseudonyms Plaintiff used in the complaint.

On June 15, 2022, while Defendants Frank and Grossmon were making rounds, Defendant Frank again told others that Plaintiff was a "rat," "exposing [Plaintiff] to verbal harassment by other inmates."  (ECF No. 1, PageID.10.)

On June 16, 2022, Plaintiff spoke with non-party Lieutenant John Doe #14 for a hearing related to the class II misconduct issued by Defendant John Doe #11.  (*Id.*, PageID.16.)  Plaintiff explained that he believed the misconduct complaint to be retaliatory and in violation of MDOC policy.  (*Id.*)  John Doe #14 left the room, to where Defendant Frank was roaming in the hallway.  (*Id.*)  When John Doe #14

in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage." (citations omitted)).

returned he told Plaintiff, "I hear you like to write PREAs." (*Id.*)  He found Plaintiff guilty. (*Id.*)

On June 17, 2022, Plaintiff was seen by Defendant John Doe #15.  (*Id.*, PageID.13.)  After Plaintiff explained his mental health concerns following the May 16th incident, Defendant John Doe #15 told Plaintiff not to put himself in such situations. (*Id.*)

On June 21, 2022, Plaintiff submitted copies of his grievances to non-party Ombudsman Keith Barber, complaining of obstruction and "other constitutional violations." (*Id.*, PageID.26.)

On June 22, 2022, Plaintiff submitted a kite to Defendant John Doe #16 because Plaintiff had not received a response to his multiple grievances.  (*Id.*, PageID.10.)

On June 23, 2022, Plaintiff was transferred to another facility.  (*Id.*, PageID.16.)  Plaintiff continued to pursue his grievance appeals.

Plaintiff brings claims of Eighth Amendment "sexual assault/sexual abuse," verbal harassment, and deliberate indifference to both Plaintiff's safety and his mental health condition, claims of First Amendment retaliation, and Fourteenth Amendment claims for violation of substantive due process.  Plaintiff also brings claims for violation of the Prison Rape Elimination Act (PREA), Michigan law, and MDOC policy.  The Court will further liberally construe Plaintiff's complaint as raising claims related to the handling of Plaintiff's kites and grievances and the

handling of Plaintiff's class II misconduct.  Plaintiff seeks a declaratory judgment and compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.     Eighth Amendment Claims: Harassment, Assault, and Physical Safety

Plaintiff contends that Defendants Frank and Grossmon "violated Plaintiff's right under the Eighth Amendment against harassment."  (ECF No. 1, PageID.30.) Specifically, in his first claim, titled "sexual assault/sexual abuse," Plaintiff alleges that Defendant Frank violated Plaintiff's Eighth Amendment rights by telling Plaintiff that Plaintiff smelled good and looked nice, and by purposefully brushing his hand against Plaintiff's penis.  (ECF No. 1, PageID.4.)  He also claims that Defendant Frank verbally harassed Plaintiff by calling Plaintiff a "rat" and a "snitch." (*Id.*, PageID.4–5.)  Plaintiff alleges, in the section of his complaint titled "deliberate indifference," that Defendant Grossmon commented on Plaintiff's PREA claim, which was intended to remain anonymous.  (*Id.*, PageID.6–7.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*,

452 U.S. 337, 345–46 (1981).  The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

Turning to Plaintiff's claims of "sexual assault/sexual abuse" by Defendant Frank on May 16, 2022, "[f]ederal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 848-49 (1994) (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th

Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g., Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards), *abrogated in part on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the

prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).

Here, Plaintiff alleges that, on one occasion, Defendant Frank asked Plaintiff a question about whether Plaintiff thought he looked and smelled good and brushed his hand against Plaintiff's penis.  The Court certainly does not condone such actions; however, based on the foregoing precedent, the Court concludes that these allegations, while disturbing, do not rise to the level of an Eighth Amendment violation.  The Court will therefore dismiss Plaintiff's Eighth Amendment claims against Defendant Frank related to the May 16, 2022, incident.

As for Plaintiff's claim that Defendant Grossmon commented on Plaintiff's PREA complaint, it is well-settled that allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Ivey*, 832 F.2d at 955.  Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.  *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).  Therefore, Plaintiff's allegation that Defendant Grossmon commented on Plaintiff's PREA complaint does not state an Eighth Amendment claim.[4]

Plaintiff also claims that Defendant Frank called Plaintiff a "rat" and "snitch" in front of other prisoners.  The Sixth Circuit Court of Appeals has recognized that "being identified as a 'snitch' in prison puts an inmate at substantial risk of assault."

---

[4] To the extent that Plaintiff seeks to bring a claim against any other Defendant for verbal harassment based upon comments alleged in Plaintiff's complaint, Plaintiff's claims would be subjected to dismissal for the same reason.

*Westmoreland v. Butler Cnty, Ky.*, 29 F.4th 721, 729 (6th Cir. 2022) (citing *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001). "It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates.  If an inmate is believed to be a 'snitch' by other inmates, he or she faces a substantial risk of assault by other inmates." *Spotts v. Hock*, No. CIV. 10-353-GFVT, 2011 WL 676942, at *2-3 (E.D. Ky. Feb. 16, 2011) (internal citation omitted).

But it is not the word itself that creates the risk of harm, it is announcing that label in the presence of other prisoners that can create a risk to Plaintiff's personal safety.  In at least one published opinion, the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch.  *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Wilson*, 148 F.3d at 600–01 (concluding that the plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury); *White v. Trayser*, No. 10-cv-11397, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that the plaintiff failed to state an Eighth Amendment claim where he alleged that the defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury); *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009

15

WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) ("[A]n Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury.").

That said, a prisoner ordinarily does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; instead, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *see also Gresham v. Walczak*, No. 1:20-cv-310, 2020 WL 7872192, at *2 (W.D. Mich. Nov. 30, 2021) (holding that an officer's accusation that a prisoner was a snitch, coupled with a threat of physical harm from a prisoner, was sufficient to state an Eighth Amendment claim).

Here, Plaintiff fails to allege facts that would permit the Court to infer that Plaintiff was in danger of being assaulted by other inmates as a result of Defendant Frank's comments. While Plaintiff need not prove that he has been the victim of an actual attack, nothing in the complaint permits the Court to infer that Plaintiff reasonably fears such an attack. *See Farmer*, 511 U.S. at 834; *Thompson*, 29 F.3d at 242–43. Plaintiff alleges that, following Defendant Frank's comments, he was exposed to a "hostile environment" and "verbal harassment by other inmates and staff." (ECF No. 1, PageID.5, 8, 21, 25.) Plaintiff does not include any facts that would plausibly suggest that Plaintiff reasonably fears physical attack. Plaintiff's allegations are simply too speculative for the Court to conclude that he has set forth

a plausible Eighth Amendment claim based upon these comments.  Therefore, his claims will be dismissed.

### 2.    Eighth Amendment Claims: Mental Health Care

Plaintiff alleges that Defendants John Doe #15 and John Doe #17 were deliberately indifferent to Plaintiff's need for mental health care.  (ECF No. 1, PageID.30.)  Plaintiff claims that, on June 3, 2022, Plaintiff told Defendant John Doe #17 of the anxiety that Plaintiff was experiencing as a result of the May 16, 2022, events.  (*Id.*, PageID.12.)  Defendant John Doe #17 told Plaintiff that she was previously unaware of Plaintiff's symptoms, but prescribed Plaintiff a series of breathing exercises.  (*Id.*)  Plaintiff then met with Defendant John Doe #15 on June 17, 2022, and expressed dissatisfaction with Defendant John Doe #17's treatment. (*Id.*)  Defendant John Doe #15 did not call Plaintiff out for counseling, telling Plaintiff only that he "shouldn't put [him]self in such situations."  (*Id.*, PageID.13.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well.  *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at *2 (6th Cir. April 26, 1985).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment,"

*Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions

19

> sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at

all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that he informed Defendants John Doe #17 and John Doe #15 about the May 15, 2022, incident involving Defendant Frank and the "anxiety" that Plaintiff was experiencing as a result.  (ECF No. 1, PageID.12–13.)

Plaintiff does not further elaborate as to the symptoms or extent of his feelings of "anxiety."  Plaintiff's allegation that he experienced "anxiety," without more, does not plausibly suggest that, without treatment, Plaintiff would be subjected to a substantial risk of serious harm.  *See Farmer*, 511 U.S. at 834. *See also, e.g., Requena v. Roberts*, 893 F.3d 1195, 1216 n. 15 (10th Cir. 2018) (explaining that the plaintiff failed to allege facts that would show that his mental health needs of "anxiety and anger" were sufficiently serious where the materials attached to the complaint do not show he was diagnosed with these conditions by a physician as needing treatment or that these conditions were so obvious that even a lay person would easily recognize the necessity for a doctor's attention).  Because Plaintiff fails to satisfy the objective prong of the deliberate indifference standard, the Court will dismiss Plaintiff's Eighth Amendment claims related to his mental health treatment.[5]

---

[5] Moreover, with respect to Defendant John Doe #17, Plaintiff does not allege facts that would allow the Court to infer that this Defendant was deliberately indifferent to Plaintiff's experience of anxiety. After hearing of Plaintiff's reported concerns,

### 3.     First Amendment Retaliation Claims

Plaintiff brings claims against Defendants John Doe #11 and John Doe #12 for violation of Plaintiff's First Amendment right to be free from unlawful retaliation. (ECF No. 1, PageID.30.)  Specifically, Plaintiff alleges that, on June 6, 2022, Plaintiff was interviewed by Defendants John Doe #11 and John Doe #12 regarding Plaintiff's PREA complaint.  (*Id.*, PageID.9.)  Defendants John Doe #11 and John Doe #12 told Plaintiff that they believed his PREA complaint to be false and issued Plaintiff a misconduct report following the interview.  (*Id.*, PageID.9–10; ECF No. 108, PageID.43.)

The Court will assume without deciding that Plaintiff's PREA complaint constitutes protected conduct for purposes of a claim for First Amendment retaliation.

However, Plaintiff's assertion that Defendants John Doe #11 and John Doe #12 told Plaintiff that they believed his PREA complaint to be false and that Plaintiff was a liar does not show that Plaintiff was subjected to an adverse action that would deter him from engaging in protected conduct.  These statements were, at most, verbal abuse or harassment.  Verbal abuse does not constitute an adverse action of constitutional significance within the meaning of a First Amendment retaliation claim.  *Taylor v. City of Falmouth*, 187 F. App'x 596, 599–601 (6th Cir. 2006) (per curiam); *see Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (holding that

---

Defendant John Doe #17 instructed Plaintiff to perform breathing exercises to lessen his anxiety. Plaintiff has not suggested that any further treatment was medically indicated, let alone that the treatment provided by Defendant John Doe #17 was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605.

alleged verbal harassment did not constitute a sufficiently adverse action).  The Court will dismiss Plaintiff's claim of First Amendment retaliation based upon verbal comments made by Defendants John Doe #11 and John Doe #12.

Plaintiff also claims that Defendants John Doe #11 and John Doe #12 issued Plaintiff a class II misconduct as a result of Plaintiff's PREA complaint, with John Doe #11 commenting "I'm going to show you!"  (ECF No. 1, PageID.10.)  This claim, taken as true as is required at this stage, cannot be dismissed on screening.

### 4.  Fourteenth Amendment Substantive Due Process Claims

Plaintiff brings claims against Defendants for violation of Plaintiff's right to substantive due process.  (ECF No. 1, PageID.18–28, 30.)  "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'"  *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'"  *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).  Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim.

### 5.    Claims Related to Plaintiff's Kites and Grievances

To the extent Plaintiff takes issue with the handling of his kite and grievance, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of Fourteenth Amendment right to due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances and kites. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Finally, Plaintiff allegations regarding the failure to respond to his kites and grievance is not active constitutional behavior.  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of the person grieved are not enough to impose liability on the superior who

reviews the complaint, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Section 1983 liability may not be imposed simply because a superior denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege such active misconduct with regard to his claims relating to his grievances and kites.

In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants based on their handling of Plaintiff's kites and grievances.

### 6.  Handling of Plaintiff's Class II Misconduct

Plaintiff complains that Defendant John Doe #11 found Plaintiff guilty of the class II misconduct "without further explanation."  (ECF No. 1, PageID.26.)  To the extent that Plaintiff intends to assert a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause with respect to Defendant John Doe #11's handling of Plaintiff's class II misconduct, Plaintiff's claim lacks merit.  The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps:

"[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).  Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*.

Plaintiff was issued a class II misconduct.  The Sixth Circuit has routinely held that misconduct convictions such as this that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due

process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben*, 887 F.3d at 252; *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Plaintiff also does not allege any facts suggesting that the sanctions imposed affected the duration of his sentence. Nor can he. Plaintiff is serving several sentences imposed from 2010 through 2022. *See* Offender Tracking Information System(OTIS),https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=6 74078(last visited July 18, 2024). A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" only for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34.

As to the second category, Plaintiff has not alleged that he suffered any "significant and atypical deprivations." Plaintiff alleges that he received a penalty of twenty days' loss of privileges. (ECF No. 1-12, PageID.27.) Such a sanction does not affect the duration of Plaintiff's sentence or impose an atypical and significant hardship on Plaintiff. *See Ingram*, 94 F. App'x at 273; *Carter*, 69 F. App'x at 680.

Because Plaintiff fails to allege that he was deprived of a protected liberty or property right, any claim for violation of his right to procedural due process will be dismissed.

## B.     PREA Claim

Plaintiff alleges that actions of Defendants Frank and Beauve violated the PREA.  (ECF No. 1, PageID.29–30.)  However, the PREA does not provide a private right of action.

> "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). Numerous courts that have addressed this issue have determined that the PREA provides no private right of action to individual prisoners. *See, e.g.*, *Hill v. Hickman County Jail*, 2015 WL 5009301 (M.D. Tenn. August 21, 2015); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."); *Faz v. N. Kern State Prison*, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA does not create a private right of action . . ."); *Woodstock v. Golder*, 2011 WL 1060566, at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008).

*Raines v. Unknown Parties*, No. 2:21-cv-108, 2022 WL 1616946, at *6 (W.D. Mich. May 23, 2022).  Accordingly, the Court will dismiss Plaintiff's PREA claim.

## C.     Claims for Violation of State Law and MDOC Policy

Plaintiff also alleges that Defendants violated the MDOC's policies and state law.  (ECF No. 1, PageID.30.)   Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide

redress for a violation of a state law or the MDOC's policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under § 1983.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Here, Plaintiff's federal claims against Defendants John Doe #1, also known as Defendant Frank, John Doe #2, also known as Defendant Beauve, John Doe #3, also known as Defendant Grossmon, John Doe #15, John Doe #17, and John Doe #16 will be dismissed and, therefore, the balance of factors weighs against the exercise of supplemental jurisdiction. Any intended state law claims against these Defendants will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts. However, because Plaintiff's First Amendment claim for retaliation will proceed against Defendants John Doe #11 and John Doe #12, the Court will allow Plaintiff to proceed with his state law claims against these Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants John Doe #1, also known as Defendant Frank, John Doe #2, also known as Defendant Beauve, John Doe #3, also known as Defendant Grossmon, John Doe #15, John Doe #17, and John Doe #16 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will dismiss Plaintiff's state law claims against Defendants John Doe #1, also known as Defendant Frank, John Doe #2, also known as Defendant Beauve, John Doe #3, also known as Defendant Grossmon, John Doe #15, John Doe #17, and John Doe #16 without prejudice to Plaintiff's ability to bring those claims in the state courts.  The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants John Doe #11 and John Doe #12:  First Amendment retaliation claim premised upon verbal comments, Fourteenth Amendment claims, claims related to the handling of Plaintiff's kites and grievances, and claims related to the handling of Plaintiff's class II misconduct.  Plaintiff's First Amendment claim for retaliation premised upon the issuance of Plaintiff's class II misconduct and supplemental state law claims against Defendants John Doe #11 and John Doe #12 remain in the case.

The Court will order the Clerk to replace on the Court's docket the pseudonym John Doe #11 with the name Sergeant Unknown Stone and the pseudonym John Does #12 with the name Corrections Officer Unknown Boerema.

An order consistent with this opinion will be entered.


Dated:  July 29, 2024                              /s/ Phillip J. Green
                                                   PHILLIP J. GREEN
                                                   United States Magistrate Judge